124 S.W.3d 469 (2004)
In the Interest of M.D.R.
No. SC 85208.
Supreme Court of Missouri, En Banc.
January 15, 2004.
*470 Edward M. Berg, Columbia, for Appellant.
Carla W. Tanzey, Mexico, MO, Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan-Scott, Asst. Atty. Gen., Jefferson City, for Respondent.
Helen Fenlon, Mexico, MO, (Guardian ad Litem) for Amicus Curiae.
MICHAEL A. WOLFF, Judge.

Introduction
M.D.R. was born in August 2000 when his mother, Lisa Williams, was incarcerated *471 at a Department of Corrections facility in Audrain County. M.D.R. has been in foster care since his birth, even after his mother was paroled in February 2001. The state brought this petition in the circuit court for termination of Ms. Williams' parental rights in April 2002, after she had been released from prison. The state's grounds for seeking termination included a provision in the statute requiring the state to seek termination of parental rights where a child has been in foster care for at least 15 of the previous 22 months. Section 211.447.2(1).[1]
The circuit court terminated Ms. Williams' parental rights, based in part on section 211.447.2(1)that M.D.R. was in foster care for at least 15 of the previous 22 monthsand based in part on evidence of neglect and other grounds under various provisions of section 211.447.4.
Ms. Williams appealed directly to this Court invoking this Court's exclusive jurisdiction where the constitutionality of a state statute is challenged. Mo. Const. article V, section 3. Ms. Williams gave notice to the Attorney General as to the challenge to the constitutionality of the statute. The Attorney General briefed the issue and argued that the statute is constitutional. The juvenile officer, on behalf of the Division of Family Services, briefed and argued the merits of the state's claim as to the sufficiency of the evidence for terminating the mother's parental rights.
This Court concludes that section 211.447.2(1) does not make foster-care custody for at least 15 of the previous 22 months a ground for terminating parental rights. Having resolved the issue by which Ms. Williams invokes this Court's jurisdiction, her appeal is transferred to the Court of Appeals for resolution of the other issues raised. See, Alumax Foils, Inc. v. City of St. Louis, 939 S.W.2d 907 (Mo. banc 1997).

Facts
M.D.R., the child, was born to Ms. Williams, the mother, on August 24, 2000, at Audrain Medical Center in Audrain County. At the time of the child's birth, the mother was incarcerated by the Department of Corrections in Vandalia. The man named by the mother as the child's father also was incarcerated by the Department of Corrections in a correctional facility in Licking. At the mother's request, the Division of Family Services took the newborn child into protective custody at the hospital. There were no relatives available to care for the child during the mother's incarceration. The child was placed with a foster family in Mexico, Audrain County. For most of the remainder of the mother's incarceration, she had weekly supervised visits with the child.
When the mother was released from prison on parole, she settled in the St. Louis area where she had other children in foster care. The Division of Family Services said it was unable to obtain a placement for the child in the St. Louis area, so the child remained in Audrain County, 150 miles away. The mother and the division apparently were unable to arrange any visits with the child after the mother's release from prison.
The mother was employed for part of the time she was on parole, but was unable to obtain permanent housing. Prior to the termination hearing, the mother was again incarcerated as a result of a parole violation. The child has remained in foster care.

The Statute Regarding the Amount of Time a Child is in Foster Care
Ms. Williams asserts that section *472 211.447.2(1)[2], which requires the filing of a petition for termination of parental rights when a child has been in foster care for at least 15 of the previous 22 months, is unconstitutional as it has been interpreted by Missouri courts. The main point of her argument is that the statute should not be construed so that 15 months in foster care is also grounds for termination of parental rights. Various Missouri courts, however, have interpreted this statute to make 15 months in foster care custody a ground for termination.[3]
Before reaching the constitutional challenge, it is appropriate for this Court to consider construing the statute in such a way as to avoid the constitutional challenge. State ex rel. Union Electric v. Public Service Commission, 687 S.W.2d 162, 165 (Mo. banc 1985).
Proper statutory construction starts with the words of the statute. In most cases, it ends there, as well. If the words of the statute are unclear or ambiguous, the Court may review the earlier versions of the law, or examine the whole act to discern its evident purpose, or consider the problem that the statute was enacted to remedy. Bachtel v. Miller County Nursing Home District, 110 S.W.3d 799, 801 (Mo.banc 2003).
Ms. Williams argues that if section 211.447.2(1) is used as grounds for termination rather than solely a trigger for filing a termination petition, it violates the Due Process Clauses of the United States Constitution and of the Missouri Constitution because it permits termination of parental rights without a finding of unfitness. See, Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The fundamental liberty interest of natural parents in raising their children does not evaporate simply because they have not been model parents or have lost temporary custody to the State. Id. at 753, 102 S.Ct.1388.
Section 211.447, the termination statute, sets out standards that guide the state as to when it should or must file a termination petition and guide a court in examining parental fitness and the best interests of the child when considering termination of parental rights. Subsections 2, 3, and 4 of section 211.447 contain subdivisions that direct or authorize a juvenile officer or the Division of Family Services to file a petition for the termination of parental rights and delimit criteria for filing. *473 A reading of section 211.447[4] in its entirety shows there is no constitutional issue. *474 *475 Subsection 2 of section 211.447 lists certain circumstances, the existence of which require the juvenile officer or the division to file a petition to terminate the parental rights of the child's parent or parents. This subsection does not label these circumstances "grounds for termination." In contrast, subsection 4 of section 211.447 enumerates certain parental conduct, the existence of which permits a juvenile officer or the division to file a petition to terminate parental rights and explicitly labels these circumstances "grounds for termination." Subsection 3 of section 211.447 provides exceptions to subsection 2 where the juvenile officer or division of family services may exercise discretion in filing a petition when the "grounds ... for termination" enumerated in subsection 2 exist. In addition, subsection 5, which sets out the requirements for termination, refers to the grounds for "termination pursuant to subsection 2, 3 or 4 of this section."
These references to subsection 2 in subsections 3 and 5 do not transform the filing trigger of section 211.447.2(1) into a statutory ground for termination of parental rights. Subdivision 1 of subsection 2 identifies temporal information available to the division that requires a termination petition to be filed, but that does not demonstrate parental unfitness. The length of a child's stay in foster care may have nothing to do with the parent's ability or inability to care for the child but, instead, may be due to circumstances beyond the parent's control, including the actions of the division itself. Subdivision 2 of subsection 2, a determination by a court that a parent has abandoned the child, and subdivision 3 of subsection 2, a determination by a court that a parent has committed certain criminal acts, on the other hand, identify conduct by the parents that requires a termination petition to be filed and that demonstrates parental unfitness and that are similar to grounds described in subsection 4. Moreover, all of the subdivisions in subsection 4 of section 211.447 that permit a termination petition to be filed and that are explicitly labeled "grounds for termination" identify conduct by the parent that demonstrates unfitness.
An examination of the federal statutes relating to foster care provides further guidance in interpreting section 211.447.2(1). The Adoption Assistance and Child Welfare Act of 1980 (AACWA), 42 U.S.C. sections 620-628, 670-679a, created a program in which the federal government *476 reimburses states for certain expenses incurred in the administration of state foster care and adoption services. To qualify for these funds, states are required to make "reasonable efforts" to reunify children with their parents. In practice, these "reasonable efforts" resulted in numerous children being stuck in foster care for indeterminate periods of time while the states attempted to rehabilitate their parents.
To remedy this and other problems with AACWA, Congress passed the Adoption and Safe Families Act of 1997 (ASFA) (Pub.L.105-89) (codified as amended in various sections of 42 U.S.C.). In ASFA, Congress addressed the question of how long states must pursue the goal of family reunification under the "reasonable efforts" standard. ASFA requires that to retain eligibility for federal funding, a state "shall file a petition to terminate the parental rights of [a] child's parents" when the child "has been in foster care under the responsibility of the State for 15 of the most recent 22 months." 42 USC 675.5(E). Thus, the 15 months is intended as a deadline to trigger the filing of a termination petition and to begin permanency planning for the child.
Subsection 2 of section 211.447 was enacted in 1998 to bring Missouri into compliance with the ASFA and tracks the language of the federal statute. By considering the history and the circumstances of the enactment of subsection 2 and harmonizing the provisions of the termination statute in its entirety, it is clear that the legislature did not intend section 211.447.2(1) as a ground for termination, but rather solely as a trigger for filing a termination petition.

Termination of Parental Rights
Filing the petition for termination of parental rights merely opens the door.
The state must prove "by clear, cogent, and convincing evidence" that statutory grounds for termination exist. If grounds for termination exist, the state must then determine whether termination is in the best interests of the child.
The satisfaction of one statutory ground for termination is sufficient to terminate parental rights, if the termination is in the child's best interest. In the Interest of E.L.B., 103 S.W.3d 774 (Mo.banc 2003). In this case, Mother's parental rights were terminated on four statutory grounds in addition to section 211.447.2(1). The court found the following statutory grounds to be supported by clear, cogent and convincing evidence: sections 211.447.2(2)(b) or 211.447.4(1)(b) (abandonment); section 211.447.4(2) (prior adjudication of abuse or neglect); section 211.447.4(3) (child under juvenile court jurisdiction for one year, little likelihood that conditions will be remedied in the near future); and section 211.447.4(6) (parent presumed unfit where rights to one or more other children have been terminated in the past three years). It is appropriately left to the court of appeals to consider Ms. Williams' challenge to the sufficiency of those determinations.
The decision to terminate parental rights is never an easy one, nor should it be. The statutory exhortation to act in the child's best interest should not be a pretext for a hyper-technical application of statutory criteria to achieve a result where the child would be "better off" in someone else's care. "[T]here is little doubt that the Due Process Clause would be offended [i]f a State were to attempt the breakup of a natural family, over the objections of the parents ... without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interests." Santosky, 455 U.S. 745 at 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.

*477 Conclusion
There is no constitutional objection to the other provisions of the statute under which the circuit court terminated Ms. Williams' parental rights. Her other challenges to the circuit court's decision shall be addressed by the court of appeals in an expedited manner as required by section 453.011.2. Case transferred.
All Concur.
NOTES
[1] All statutory references are to RSMo.2000 unless otherwise indicated.
[2] Section 211.447.2 states in relevant part:

2. Except as provided for in subsection 3 of this section, a petition to terminate the parental rights of the child's parent or parents shall be filed by the juvenile officer or the division ... when:
(1) Information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months ...
[3] These decisions include: In the Interest of T.T.M. J-H, L.M.N .H. & P.A.Q.J., 120 S.W.3d 801(Mo.App. W.D.2003), In the Interest of T.D.W., T.S.L.W. & D.D.L.W., 120 S.W.3d 228 (Mo.App. E.D.2003), In the Interest of K.C.M., 113 S.W.3d 681 (Mo.App. W.D.2003), In the Interest of J.J.P., 113 S.W.3d 197 (Mo.App. S.D.2003), In the Interest of E.K.M. and L.K.M., 111 S.W.3d 504 (Mo.App. E.D.2003), In the Interest of K.J.K. and G.T.K., 108 S.W.3d 62 (Mo.App. S.D.2003), In the Interest of B.S.W., B.R.W. and B.J.W., 108 S.W.3d 36 (Mo.App. S.D.2003), In the Interest of D.C.S., D.E.S. Jr., M.J.S. and Z.N.S., 99 S.W.3d 534 (Mo.App. W.D.2003), In the Interest of A.T., 88 S.W.3d 903 (Mo.App. S.D.2002), In the Interest of K.C.M., 85 S.W.3d 682 (Mo.App. W.D.2002), In the Interest of A.H., C.H. and A.B., 45 S.W.3d 898 (Mo.App. W.D.2001), In the Interest of S.A.J.C.H., 36 S.W.3d 803 (Mo.App.W.D.2001) and In the Interest of C.N.W. and K.S.W., 26 S.W.3d 386 (Mo.App. E.D.2000). These cases should not be followed.
[4] 211.447. Petition to terminate parental rights filed, whenjuvenile court may terminate parental rights, wheninvestigation to be madegrounds for termination.

1. Any information that could justify the filing of a petition to terminate parental rights may be referred to the juvenile officer by any person. The juvenile officer shall make a preliminary inquiry and if it does not appear to the juvenile officer that a petition should be filed, such officer shall so notify the informant in writing within thirty days of the referral. Such notification shall include the reasons that the petition will not be filed. Thereupon, the informant may bring the matter directly to the attention of the judge of the juvenile court by presenting the information in writing, and if it appears to the judge that the information could justify the filing of a petition, the judge may order the juvenile officer to take further action, including making a further preliminary inquiry or filing a petition.
2. Except as provided for in subsection 3 of this section, a petition to terminate the parental rights of the child's parent or parents shall be filed by the juvenile officer or the division, or if such a petition has been filed by another party, the juvenile officer or the division shall seek to be joined as a party to the petition, when:
(1) Information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months; or
(2) A court of competent jurisdiction has determined the child to be an abandoned infant. For purposes of this subdivision, an "infant" means any child one year of age or under at the time of filing of the petition. The court may find that an infant has been abandoned if:
(a) The parent has left the child under circumstances that the identity of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child; or
(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so; or
(3) A court of competent jurisdiction has determined that the parent has:
(a) Committed murder of another child of the parent; or
(b) Committed voluntary manslaughter of another child of the parent; or
(c) Aided or abetted, attempted, conspired or solicited to commit such a murder or voluntary manslaughter; or
(d) Committed a felony assault that resulted in serious bodily injury to the child or to another child of the parent.
3. If grounds exist for termination of parental rights pursuant to subsection 2 of this section, the juvenile officer or the division may, but is not required to, file a petition to terminate the parental rights of the child's parent or parents if:
(1) The child is being cared for by a relative; or
(2) There exists a compelling reason for determining that filing such a petition would not be in the best interest of the child, as documented in the permanency plan which shall be made available for court review; or
(3) The family of the child has not been provided such services as provided for in section 211.183.
4. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
(1) The child has been abandoned. For purposes of this subdivision a "child" means any child over one year of age at the time of filing of the petition. The court shall find that the child has been abandoned if, for a period of six months or longer:
(a) The parent has left the child under such circumstances that the identity of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child; or
(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so;
(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development;
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control; or
(4) The parent has been found guilty or pled guilty to a felony violation of chapter 566, RSMo, when the child or any child in the family was a victim, or a violation of section 568.020, RSMo, when the child or any child in the family was a victim. As used in this subdivision, a "child" means any person who was under eighteen years of age at the time of the crime and who resided with such parent or was related within the third degree of consanguinity or affinity to such parent; or
(5) The child was conceived and born as a result of an act of forcible rape. When the biological father has pled guilty to, or is convicted of, the forcible rape of the birth mother, such a plea or conviction shall be conclusive evidence supporting the termination of the biological father's parental rights; or
(6) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated pursuant to subsection 2 or 3 of this section or subdivisions (1), (2), (3) or (4) of subsection 4 of this section or similar laws of other states.
5. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.
6. When considering whether to terminate the parent-child relationship pursuant to subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
(1) The emotional ties to the birth parent;
(2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.
7. The court may attach little or no weight to infrequent visitations, communications, or contributions. It is irrelevant in a termination proceeding that the maintenance of the parent-child relationship may serve as an inducement for the parent's rehabilitation.
8. In actions for adoption pursuant to chapter 453, RSMo, the court may hear and determine the issues raised in a petition for adoption containing a prayer for termination of parental rights filed with the same effect as a petition permitted pursuant to subsection 2, 3 or 4 of this section.